**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NORWOOD COOK, | : | |
| | : | Civil No. 04-5713 (RBK) |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | **MEMORANDUM OPINION** |
| WARDEN, FCI FORT DIX, | : | |
| | : | |
| Respondent. | : | |

**APPEARANCES:**

    NORWOOD COOK, Petitioner <u>pro</u> <u>se</u>
    #08831-084
    F.C.I. Ray Brook
    P.O. Box 9009
    Ray Brook, New Jersey 12977

    IRENE ELAINE DOWDY, ESQ.
    United States Attorney's Office
    402 East State Street, Suite 430
    Trenton, New Jersey 08608
    Counsel for Respondent

**KUGLER, District Judge**

    This matter is before the Court on petitioner Norwood Cook's ("Cook") application for habeas corpus relief under 28 U.S.C. § 2241, challenging the loss of 27 days good conduct time, imposed upon him as a disciplinary sanction for committing Prohibited Act 297, a third party call, on May 14, 2003. Cook seeks restoration of his good conduct time, expungement of the incident report, a declaratory judgment that prohibited act 297 is

unconstitutionally vague, and injunctive relief enjoining further enforcement of the prohibited act 297 and barring the Bureau of Prisons ("BOP") from transferring petitioner to another prison facility pending adjudication of this petition. Shortly thereafter, Cook filed a motion to amend his petition to add a claim seeking redress for his alleged retaliatory transfer from FCI Fort Dix to FCI Ray Brook, which was opposed by respondent. This Court denied petitioner's motion by Order entered on August 23, 2005.

The named respondent, the Warden at FCI Fort Dix, filed an answer to the petition on or about March 11, 2005. On March 29, 2005, Cook filed a motion for discovery. Respondent filed an opposition to the discovery motion on April 22, 2005. The Court has reviewed all documents submitted and, for reasons now discussed, will deny this petition for lack of merit. The motion for discovery will be dismissed as moot.[1]

---

[1] The respondents contend that discovery is not usually permitted in a habeas action unless the petitioner who seeks discovery can show "good cause" for the specific discovery requested. Renis v. Thomas, 2003 WL 22358799**1,2 (S.D.N.Y. Oct. 16, 2003), citing, Bracy v. Gramley, 520 U.S. 899, 904 (1997). In this case, there is no need for a tape recording of the telephone call because petitioner has admitted that he made a third party call. Further, there is little probative value in another Inmate Screening Form that Cook may have signed at FDC Philadelphia several years after the incident of May 2003. Thus, even if this Court did not determine that this habeas petition is without merit and should be denied, the motion for discovery would have been denied on the ground that petitioner fails to demonstrate good cause for the discovery requested.

BACKGROUND

At the time the alleged disciplinary infraction occurred, Cook was confined at F.C.I. Fort Dix in Fort Dix, New Jersey, serving a 100 month prison term for possession of 50 grams or more of cocaine base with the intent to distribute (violation of 21 U.S.C. § 846), and a consecutive 60 month prison term for possession of a firearm during a drug trafficking offense (violation of 18 U.S.C. § 924(c)).  His projected release date is May 23, 2014.  (Respondent's Answer at pp. 4-5).

On May 15, 2003, BOP Officer Keith Mapps reviewed a monitored telephone call that Cook had placed on May 14, 2003. It was revealed that Cook had placed a call to a female, who then called a third person at Cook's direction.  Cook and the woman passed information to the third party.  The third party call was completed and Cook and the woman talked for an additional 11 minutes before ending their call.  Officer Mapps then prepared an incident report charging Cook with violation of Code 297, an unauthorized third party call.  See 28 C.F.R. § 541.13 Table 3. (Resp. Exhibit 1c, Incident Report).

An investigation was conducted by the investigating Lt. J. Anderson on May 15, 2003.  Lt. Anderson advised Cook of his rights and gave petitioner a copy of the incident report.  Cook told Anderson that he had made a telephone call on May 14, 2003, but did not know that he was making a three way call.  He said

that he was trying to check on his mother who he had not heard from for awhile.  Cook said he did not have any witnesses and Lt. Anderson referred the matter to the Unit Disciplinary Committee ("UDC").  (Resp. Ex. 1c).

On May 19, 2003, Cook was given written notice of the Disciplinary Hearing Officer ("DHO") hearing and a written statement of his rights, which advised that he had the right to have a staff representative at the DHO hearing and that he could call witnesses and present documentary evidence at the hearing.  The DHO report discloses that Cook waived his right to a staff representative and did not call any witnesses.  (Resp. Ex. 1d).

An initial hearing was held on May 28, 2003 before DHO Steven T. Morton at FCI Fort Dix.  Cook admitted placing the call but did not know that what he did was prohibited.  In support of this claim, Cook produced the Admission and Orientation Handbook from FCI Fort Dix, which did not list Code violations for Code 197 (telephone use to further criminal activity), Code 297 (use of telephone for abuses other than criminal activity, including, but not limited to third-party calling), and Code 397 (use of telephone for abuses other than criminal activity).  See 28 C.F.R. § 541.13 Table 3.  DHO Morton postponed the hearing to obtain information on whether Cook had actually received proper notice of the prohibited acts.  (Resp. Ex. 1d and 1e).

4

The hearing was reconvened on July 1, 2003.  DHO Morton had obtained an Intake Screening Form from the Federal Detention Center in Philadelphia, where Cook had initially been placed before his transfer to FCI Fort Dix.  Cook had signed the form on March 27, 2003, acknowledging that he had received the Admission and Orientation Booklet at FDC Philadelphia.  The booklet contained reference to the Prohibited Acts and Disciplinary Severity Scale.  In particular, at page 27, the FDC Philadelphia booklet identified Code violation 297.  (Resp. Ex. 1f).  DHO Morton also showed Cook that the FCI Fort Dix Admissions and Orientation Handbook submitted by Cook did list on page 9, under the heading for "Telephone Calls", that "Three way phone conversations are also prohibited."  (Resp. Ex 1e).  Thus, DHO Morton concluded that Cook had received proper notice of the prohibited acts and the corresponding severity scale.  DHO Morton also found that Cook's actions violated Code 297.

The DHO further noted that the prohibited act as violated by Cook, namely, a third party call, shows a disregard for the rules and regulations, and circumvents the BOP's ability to properly monitor inmate telephone calls since the third person with whom the inmate is speaking cannot be identified.  The following sanctions were imposed: (1) loss of 27 days good conduct time; (2) loss of telephone privileges for 180 days; and (3)

disciplinary segregation for 30 days, suspended pending 180 days clear conduct. (Resp. Ex. 1d).

A written decision/report was prepared on July 31, 2003, which included a statement of petitioner's appeal rights. The report was served on Cook on August 1, 2003. Cook claims he did not receive the DHO decision until October 2003.

## II. CLAIMS PRESENTED

Cook raises the following claims in his petition:

A.   Prohibited Act 297 as applied is unconstitutionally vague.

B.   Petitioner was denied due process when he did not receive written notice of newly discovered evidence to be used against him.

C.   Petitioner was not afforded a fair and impartial hearing officer.

D.   The DHO abused his authority.

E.   Petitioner was not given a written copy of the DHO's decision within ten days as required under the law.

## III. DISCUSSION

A.   Standard of Review

Cook seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3). That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of

the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.   Exhaustion of Administrative Remedies

Respondent contends that Cook did not timely pursue his administrative remedies, set forth at 28 U.S.C. § 542.10 et seq., to appeal the DHO's decision.  Cook did submit an administrative appeal to the Northeast Regional Office, but it was rejected as untimely.  On December 16, 2003, Cook appealed to the BOP's Central Office.  The BOP Central Office also rejected the appeal, concurring with the Regional Office's rationale for rejecting the appeal as untimely.

Cook argues that he did place his administrative remedy in the prison mailbox in a timely manner, as witnessed by another inmate.  He claims that the mail system at FCI Fort Dix "lacks accountability" and "credibility", and that there is the

likelihood that his administrative remedies were deliberately or mistakenly held in the prison for more than a week.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies. See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973). The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000). See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996). Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if

the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Here, it appears that Cook attempted to exhaust his administrative remedies, but his attempts were rejected as untimely. Cook also explains that he did file his administrative appeals in a timely manner, but that it is likely that the prison mail system, which is allegedly notorious for deliberate or mistaken holding of mail, caused Cook's appeal to be considered untimely.

This Court finds that any further effort by Cook in exhausting his administrative remedies at this juncture would be futile. Although the Regional Office has determined that Cook's appeal was not timely, Cook reasonably argues that the delay in receipt of his appeal papers by a matter of days is explained by the likelihood of the prison's delay in mailing from FCI Fort Dix. Moreover, a sufficient factual record has already been developed with respect to the disciplinary proceeding at issue. Finally, Cook raises an issue of the constitutionality of the Code 297, which is a question within the expertise of courts. See Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 n.9 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject

9

administrative constructions which are contrary to clear congressional intent"). Accordingly, the purposes of the exhaustion requirement do not readily apply in this case, and the Court will review the merits of Cook's petition rather than dismiss it on this procedural ground.

C.  Applicable Regulations

The Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10 et seq. Prohibited acts are categorized according to the severity of the conduct. Code Level 100s are deemed the "Greatest", code level 200s as "High", and proceeding to 400 level codes as "Low Moderate." The Prohibited Acts Code and Disciplinary Severity Scale is set forth at 28 C.F.R. § 541.13 Tables 3-5. Incident reports are prepared in accordance with § 541.14 and are referred to the UDC for an initial hearing pursuant to § 541.15.

The UDC hearing is typically conducted within three working days of the incident, but may be extended for good cause pursuant to § 541.15(b) and (k). The UDC may refer the matter to the DHO for further proceedings pursuant to § 541.15(f). In this case, referral of the incident report to the DHO was mandatory under § 541.13(a)(2), because it was designated as a high category offense and the UDC does not have the authority to disallow good conduct time. Disallowance of good conduct time credits for high

category offenses, pursuant to Sanction B.1 in Table 3, must be imposed under 28 C.F.R. § 541.13(a)(2).

DHO hearing procedures are set forth at § 541.17. These procedures require the following: (a) 24-hour advance written notice of charge before inmate's initial appearance before the DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, § 541.17(c); (d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, § 541.17(d). The DHO shall prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions. 28 C.F.R. § 541.17(g). A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days. Id.

These procedures are intended to meet or exceed the due process requirements prescribed by Wolff v. McDonnell, 418 U.S. 539 (1974). See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

11

D.  Merits of Petitioner's Claims

   1.  *Procedural Due Process Claims*

The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections.  U.S. Const. amend. XIV.  In Wolff v. McDonnell, supra, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."  Wolff, 418 U.S. at 563-71.  An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings.  See Von Kahl, 855 F. Supp. at 1418 (citing Wolff, 418 U.S. at 563-72).

In the instant case, Cook asserts that he did not receive written notice of newly discovered evidence, which was used against him at the reconvened hearing on July 1, 2003.  He also contends that the DHO was not fair and impartial and abused his authority in postponing the hearing so as to gather additional

12

evidence against petitioner. Finally, Cook asserts that he received the DHO's decision more than 10 days after it was rendered in violation of 28 C.F.R. § 541.17(g).

### a. Newly discovered evidence

The only evidence that was newly provided at the July 1, 2003 hearing was the Admissions and Orientation handbook from the FDC in Philadelphia, and the acknowledgment of receipt form signed by Cook. Now Cook seeks to refute his receipt of the handbook, despite his signature on the acknowledgment form. He has proffered no evidence to refute his notice of the FDC Philadelphia handbook, except his own testimony that he did not receive it. The Court finds that Cook's signature on the acknowledgment form is more than sufficient to outweigh Cook's belated defense that he never received the handbook.

Moreover, regardless of whether Cook did not receive the handbook while at FDC Philadelphia, Cook does admit that he received a copy of the handbook at FCI Fort Dix. The Court notes that the FCI Fort Dix handbook clearly states that three way calls were prohibited. Thus, Cook had actual notice of the type of telephone calls and conversations that were prohibited. The handbook also provided the severity scale so that an inmate could determine the severity of an institutional Code violation.

Therefore, the Court finds that the evidence produced by the DHO at the July 1, 2003 hearing was not new or unknown by

13

petitioner.  Moreover, Cook has not made a showing of how the "new" evidence prejudiced his ability to defend himself at the hearing.  Given his signature on the form acknowledging receipt, it would appear that Cook's actual receipt of the handbook is irrefutable.  Consequently, where this Court finds no denial of due process in this case, this ground for relief is denied.

       b.   <u>Impartial hearing officer</u>

Next, Cook alleges that the DHO was not fair and impartial, and abused his authority by postponing the initial hearing and conducting an investigation which would prove petitioner guilty of the code violation.

A prisoner is entitled to an impartial disciplinary tribunal, <u>Wolff</u>, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body."  <u>Meyers v. Alldredge</u>, 492 F.2d 296, 306 (3d Cir. 1974).  Here, DHO Morton was not involved in the investigation or circumstances underlying the charge.  Rather, he simply postponed the hearing for evidence to be provided, addressing Cook's claim at the first hearing that he did not have notice that a three way call was prohibited.

Cook has not demonstrated any facts to support the allegation that the DHO was biased.  Nor does Cook cite any authority for his allegation that the DHO did not have the power

14

to postpone a hearing.  Cook received notice of the charges before his first hearing.  He then received notice at the hearing that evidence pertaining to knowledge of the prohibited acts was necessary to adjudicate Cook's defense that he did not know the charged conduct was prohibited.  The "new" evidence was nothing more than Cook's signed Inmate Screening Form from FDC Philadelphia, acknowledging receipt of the Admissions and Orientation Handbook, and the handbook itself.  The FCI Fort Dix handbook, which Cook had referred to at the initial hearing, also was produced.

The Court finds nothing in the record to support Cook's general contention that the DHO was not fair or impartial, or abused his authority during the disciplinary proceedings.  Accordingly, this claim is denied.

      c.   <u>Late receipt of DHO decision</u>

Cook also complains that he did not receive a written copy of the DHO's decision within the ten days prescribed under the rules.  He contends that this delay was intended to frustrate his appeal process.  Cook further claims that the delay caused prejudice because if he had been granted a new hearing, many of his witnesses were no longer at FCI Fort Dix.

The record shows that the Regional Office accepted Cook's representation that he did not receive the DHO decision until October 17, 2003.  However, Cook's administrative appeal was

15

rejected as untimely because the Regional Office did not receive the appeal within 20 days after October 17, 2003, not July 31, 2003 when the decision was actually prepared.  Thus, Cook's claim that there was a delay to frustrate appeal is baseless.

Furthermore, this Court finds no prejudice to Cook from the delay with respect to the inability to call witnesses because Cook has never identified any witnesses and had previously stated there were no witnesses to the alleged prohibited conduct of May 14, 2003.  Therefore, this ground for habeas relief is denied as baseless.

    2.   *There Was Sufficient Evidence to Support the Charge*

The Supreme Court has held that procedural due process is not satisfied "unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991).  The Supreme Court has stated:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances.  The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.  Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Hill, 472 U.S. at 456 (internal citations omitted). Moreover, the Court stated: "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Id. at 457.

Here, there is sufficient evidence noted by the DHO in reaching his determination. The DHO's Report demonstrates that, after an investigation and the DHO's consideration of all the relevant evidence, the DHO found that the greater weight of evidence supported a finding that Cook did commit the prohibited act in violation of Code 297. This evidence included petitioner's admission that he made the third party call. It also included the FCI Fort Dix Handbook, the FDC Philadelphia handbook, and the signed acknowledgment of receipt form, which showed that Cook did have actual notice that such three way calls were prohibited acts in federal prison facilities.

Therefore, based upon this evidence as relied upon by the DHO, the Court finds that Cook's right to due process was not violated by the determination of the DHO. The procedures enunciated in Wolff, supra, were complied with, and there was "some evidence", in accordance with Hill, supra, to support the DHO's finding of guilt.

17

3.  *Code 297 Was Not Unconstitutionally Vague*

"It is a basic principle of due process that a law is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972).  In the context of prison regulations, "[d]ue process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions." Meyers v. Aldredge, 492 F.2d 296, 310 (3d Cir. 1974).  Thus, "vagueness principles must be applied in light of the legitimate needs of prison administration."  Id. at 311.  Because "legalistic wrangling" over the meaning of prison rules "may visibly undermine the [prison] administration's position of total authority," federal courts have deferred to the interpretation of those rules by prison authorities "unless fair notice was clearly lacking."  Hadden v. Howard, 713 F.2d 1003, 1008 (3d Cir. 1983) (quoting Meyers, 492 F.2d at 311).

Here, Code 297 prohibits telephone activities constituting "third-party calling".  28 C.F.R. § 541.13 Table 3.  In the circumstances presented here, there can be no doubt that the language of Code 297 and § 541.13 are sufficient to provide "fair

18

notice," to an inmate that third party calls are prohibited.[2] Cook is not entitled to relief on his "vagueness" claim.

### CONCLUSION

Based upon the foregoing, Cook's petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, will be denied for lack of merit.  Furthermore, because the Court has determined that the § 2241 petition is without merit, petitioner's motion for discovery will be dismissed as moot.  An appropriate Order accompanies this Opinion.

S/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated: December 16, 2005

---

[2] Cook seems to suggest that the Code is vague as to "three way calls" (a violation under Code 397) and third party calling (a violation under Code 297).  However, the distinction, if any, is irrelevant because the DHO reasonably determined that the call, which involved telephone conversations with a third party, constituted third party calling.  Cook admitted that he telephoned one person (who was on his approved recipient list) and asked that person to place a call to a third person (who was not on the approved list) so as to effect a simultaneous call to a third party.  Cook was aware that this conduct circumvented the ability of the BOP to properly monitor his telephone calls since, by way of a third party calling, the BOP could not identify the third person with whom Cook was speaking.